Patsy HARDIN, Admx. *v.* CITY of
DEVALLS BLUFF, Arkansas et al

Patsy HARDIN, Admx. *v.* COUNTY of PRAIRIE,
Arkansas et al

73-289 & 73-290                              508 S.W. 2d 559

Opinion Delivered May 6, 1974

*Ray & Donovan*, by: *Robert J. Donovan*, for appellant.

*Charles A. Walls, Jr.*, for City of DeValls Bluff, et al.

*Wallace, Hilburn & Wilson, LTD.*, by: *Zachary D. Wilson*, for Prairie County et al.

*Jim Guy Tucker*, Atty. Gen., by: *Lewis D. Smith*, Dep. Atty. Gen., for State of Arkansas.

CARLETON HARRIS, Chief Justice. These cases, consolidated for submission, relate to governmental immunity

of cities and counties. Appellant, Patsy Hardin, Administratrix of the Estate of Nadine Hardin Alsup, alleges in a complaint against both Prairie County, together with its County Judge, and the City of DeValls Bluff and its Mayor, Recorder, and Board of Aldermen that Mrs. Alsup was incarcerated at DeValls Bluff for public drunkenness and disturbing the peace by an officer acting in behalf of the City and the County[1]; that she was confined in the jail, left there without an attendant, and that subsequently a fire occurred in the jail from which Nadine Alsup died of suffocation. It was asserted that confinement under the circumstances constituted negligence which was the proximate cause of decedent's death.[2] The County demurred to the complaint and the City moved for summary judgment. The court sustained the demurrer of the County and dismissed the complaint against it, appellant declining to plead further, and likewise granted summary judgment in favor of the City dismissing the action of appellant. From these judgments, appellant brings this appeal. For reversal three points are asserted, but all relate to the constitutionality of Act 165 of 1969, and that is actually the only issue before this court.

Pertinent background of this case reflects that on June 3, 1968, this court handed down the opinion of *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W. 2d 45 (Rehearing denied July 15, 1968), where we said that the rule of law established by precedent granting to municipalities immunity from liability

---

[1]The complaint does not set out where Mrs. Alsup was arrested or in what jail she was placed; i.e., whether county or city. According to the allegations, Roland Martineau was acting in a dual capacity when he made the arrest, i.e., Deputy Sheriff of Prairie County and Law Enforcement Officer of the City of DeValls Bluff, a City of the Second Class.

[2]Suit was originally filed in the United States District Court, Eastern District of Arkansas, Western Division, by Mrs. Hardin, as Administratrix, against "Michael E. Grady, Administrator of the Estate of S. E. Grady, individually and as Sheriff of Prairie County, Arkansas, and Roland Martineau, individually and as Deputy Sheriff of Prairie County, Arkansas, jointly and severally." On August 9, 1973, a judge of that court, upon motion of Mrs. Hardin, ordered a stay of proceedings for a reasonable time to enable Mrs. Hardin to litigate in the State Courts of Arkansas the validity of Act 165 of the General Assembly of 1969 wherein tort immunity to political subdivisions of the State was declared. The order then recites:

"In granting the motion the Court assumes that if Act 165 is held to be unconstitutional by the State courts plaintiff will proceed in those Courts against Prairie County, Arkansas, and the City of DeValls Bluff, and will dismiss this action against the estate of the former Sheriff of Prairie County and Deputy Sheriff Martineau. The Court should be kept advised of the progress of the State court litigation, and counsel are placed on notice that further action may be taken in this case if the State court litigation is unduly prolonged."

for damages negligently inflicted on others while acting in a governmental capacity was overruled. That case involved injuries allegedly suffered by Mrs. Parish when her car was negligently struck by the city's garbage truck. The trial court had sustained the demurrer of the city and in the opinion cited, we reversed that court.

The General Assembly of 1969 enacted legislation which became law on March 5, 1969, approximately ten months following *Parish* v. *Pitts, supra*. In the first section of that act, Ark. Stat. Ann. § 12-2901 (Supp. 1973), the General Assembly set forth the State's public policy, as follows:

> "12-2901. It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees."

This is the section that is primarily at issue and which appellant contends is contrary to Article II, Section 13 of the Arkansas Constitution of 1874, which provides:

> "§ 13. Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, conformably to the laws.'[4]

---

[3]The balance of the act provides:

"12-2902. Each county municipal corporation, school district, special improvement district, or other political subdivisions of the State is hereby authorized to provide for hearing and settling tort claims against it. (Acts 1969, No. 165, § 2, p. 455.)

"12-2903. All political subdivisions shall carry liability insurance on all their motor vehicles in the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act (Ark. Stat., § 75-1402 et seq.; Act 347 of 1953, as amended)."

[4]Sections 1, 4, 28 and 43 of Article VII, Constitution of Arkansas, are also mentioned. Section 1 provides that the judicial power of the State shall be vested in a Supreme Court, Circuit Courts, County and Probate Courts, and Justices of the Peace, and further, that the General Assembly may also vest such jurisdiction as may be deemed necessary in Municipal Corporation Courts, Courts of Common Pleas, and when deemed expedient may establish separate Courts of Chancery. Section 4 deals with the jurisdiction and powers of the Supreme Court. Section 28 deals with the jurisdiction of the County Court and Section 43 deals with the jurisdiction of Corporation (Municipal) Courts.

At the outset, let it be pointed out that the decision in *Parish* v. *Pitts, supra,* was not based upon any constitutional ground, and the constitutional arguments now presented were not relied upon in any manner by this court in reaching its conclusions. Accordingly, the legislature was free to legislate in this field and to declare the State's public policy. This it did very quickly, and the action taken by the legislature was commented upon in the first opinion handed down by this court after the passage of Act 165 of 1969 (*Williams* v. *Jefferson Hospital Ass'n Inc.,* 246 Ark. 1231, 442 S.W. 2d 243) where we said:

> "There is another reason why the *Parish* case is not controlling. The Legislature acted within less than one year after *Parish* v. *Pitts.* By Act 165 of 1969 that holding was overturned. That Act declares the public policy to be that all political subdivisions of the State be immune from tort liability."

On October 6, 1969, two cases were handed down by this court which referred to Act 165. The first of these was *Sullivan, Adm'r.* v. *Pulaski County,* 247 Ark. 259, 445 S.W. 2d 94, wherein we quoted Section 1 of the Act, and then stated, "This statement of public policy is plain and unambiguous and leaves no room for doubt."

We also pointed out that *Parish* v. *Pitts, supra,* had made it clear that the court in rendering that opinion had not considered the liability of any other governmental unit or political subdivision; accordingly, as far as counties are concerned, this court has *never* departed from the doctrine of governmental immunity. *Chandler* v. *Pulaski County,* 247 Ark. 262, 445 S.W. 2d 96, also referred to Act 165 and made it clear that the General Assembly had full authority to declare the public policy of the State in this field.

As to the constitutional provision relied upon by appellant and hereinbefore set out, let it first be said we do not consider that *Emberson* v. *Buffington,* 228 Ark. 120, 306 S.W. 2d 326, relied upon in large measure by appellant, has any bearing on the issue here presented for *Emberson* related only to actions between individuals.

Appellant mentions the provisions of Act 165 of 1969 (Ark. Stat. Ann. § 12-2902 [Supp. 1973]) which authorize

political subdivisions of the State to provide for hearings and the settling of tort claims against them, and asserts that such provisions are invalid and that she is entitled to have her action heard in a court of law. Included in this contention is the argument that she is otherwise deprived of an appeal. For reasons hereafter set out, we do not deem it necessary to discuss Section 12-2902, bearing some similarity to statutes dealing with the State Claims Commission and particular statutes relating to other agencies" wherein the judicial branch of the government is precluded from reviewing actions taken by such instrumentalities.

Over a century ago in the case of *Granger and Wife* v. *Pulaski County*, 26 Ark. 37, this court, referring to counties, said:

> "It is well settled that, at common law, these *quasi* corporations are not liable to a private action at the suit of a party injured, resulting from the non-performance by its officers of a corporate duty, and no such action lies unless given by statute. This doctrine has been repeatedly asserted and applied by the courts of this State, where actions have been brought against counties and townships for injuries received in consequence of defects in the public highway.***"

This holding of county immunity for governmental functons has been reiterated during the past one hundred years so many times that further citation of authority is unnecessary.

With the exception of *Parish* v. *Pitts, supra*, the same holding has been consistent with regard to municipal corporations. In 1872, in the case of *City of Little Rock* v. *Willis*, 27 Ark. 572, Chief Justice McClure, writing for this court, said:

> "It is no easy matter to lay down a precise rule embracing the torts for which a private action will lie against a municipal corporation; but it may be generally stated, that the liability of a body created by statute, must be determined by the statute which creates it, for it

---

'From Ark. Stat. Ann. § 13-1406 (Repl. 1968):
"The action taken by the Commission with respect to the allowance or disallowance of a claim, in whole or in part, shall be final and binding on all parties thereto and shall not be subject to judicial review at their instance."

'From Ark. Stat. Ann. § 83-135 (Repl. 1960):
"The decision of the State Welfare Department on any appeal for assistance grants shall be final; nor shall any action be brought in any court having for its object the changing of a ruling of said department on the merits of any application."

is clear that a right of action against a municipal corporation does not exist at common law.

"That a municipal corporation may be made liable for damage, in a case like that presented by the record of this case, there is no doubt; but that is not the question; the question is, does the statute, creating the city of Little Rock, give to the appellee a right of action for the wrong complained of? This question must be determined, not by what ought to be, but by the plain letter of the statute. Our duty is to declare what the law is, and not what it ought to be."

In the 1879 case of *Trammell* v. *Town of Russellville, et al*, 34 Ark. 105 (approximately five years after the adoption of our present Constitution), this court, speaking through Justice Harrison, discussed the governmental, as distinguished from proprietary, character of municipal corporations, and as to the former, said:

"For acts done by them in their public capacity, and in discharge of the duties imposed upon them for the public benefit, cities and towns incur no liability to persons who may be affected or injured by them."

It thus appears that, from the outset, our court has recognized that the drafters of our Constitution, despite Article II, Section 13 of the 1874 Constitution, never had in mind that one, without legislative authority, could receive redress for asserted wrongs against counties and cities acting in their governmental capacities.

Nor is this position just based on ancient authority. We have not extended the guarantee of rights of this provision beyond a limitation on the power of the legislature to abolish rights of action which were well established when the Constitution was adopted. It neither authorizes the creation of rights of action by the courts nor limits the power of the General Assembly to enact remedial laws. See *McFarlin* v. *Kelly*, 246 Ark. 1237, 442 S.W. 2d 183; *Peugh* v. *Oliger*, 233 Ark. 281, 345 S.W. 2d 610; and *Roberson* v. *Roberson*, 193 Ark. 669, 101 S.W. 2d 961. Since there was no well established jural right to recovery from a city in a tort action such as this at the time of the adoption of our constitution, Art. 2, Sec. 13, does not prohibit the legislation involved here.

For that matter, it is not certain that appellant has been denied all remedies for wrongs allegedly suffered, for as herein mentioned, she has already instituted suit against the estate of the deceased Sheriff and against the Deputy Sheriff in Federal Court.

At any rate, based on the reasoning heretofore set out, the judgment is affirmed.

It is so ordered.

---

[7]The complaint, and accordingly the allegations therein, is not a part of this record.